**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **WORLD TECH AIR 23, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 24-CV-00538-CDL** |
| **v.** | ) | |
| | ) | |
| **LUFTHANSA TECHNIK ENGINE SERVICES, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 79). Defendant filed a Response in Opposition (Doc. 82), and Plaintiff filed a Reply (Doc. 83). The Court has considered the parties' briefing as well as counsel's oral argument on the motion. (*See* Doc. 88).

To succeed in moving for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this initial burden, "the burden shifts to the nonmovant to 'set forth specific facts showing that there is a genuine issue for trial.'" *Lazy S Ranch Props., LLC v. Valero Terminaling and Distribution Co.*, 92 F.4th 1189, 1198 (10th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). In doing so, "[t]he nonmovant must show more than a 'scintilla of evidence' in support of its position, instead, the evidence must be sufficient for a jury to reasonably

find for the nonmovant." *Id*. (quoting *Anderson*, 477 U.S. at 252). When ruling on the motion, the Court should view the evidence "in the light most favorable to the non-moving party." *Isaacson v. Isaacson*, 479 F. App'x 162, 165 (10th Cir. 2012) (quoting *Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1286 (10th Cir. 2011)).

Plaintiff seeks summary judgment on its claim for declaratory judgment regarding the parties' written "Second Agreement" for inspection and repair of two aircraft engines. Plaintiff's Second Amended Complaint seeks a Declaratory Judgment that the Second Agreement was terminated and of no further effect as of February 14, 2024. (Doc. 91 at 5). In the motion, Plaintiff seeks declaratory judgment (1) that the Engine Inspection Agreement dated March 4, 2022 is terminated as a matter of law; (2) that Defendant has no contractual entitlement to the storage charges it claims as a matter of law, because the agreement was terminated before Defendant completed work on the engines; and (3) that any compensation of Defendant for storage of the engines is limited to reasonable storage fees to be determined by the Court at trial.

Defendant does not dispute that the Second Agreement was terminated on February 14, 2024. Accordingly, it contends there is no justiciable controversy as to that aspect of the claim. Plaintiff maintains that there is an active dispute concerning the parties' rights under the agreement—specifically, whether Defendant retains the right to charge contractual storage fees despite termination of the agreement.

The Second Agreement provides that

> Unless otherwise agreed upon between the parties in writing, should the Customer's Engine(s) remain at BizJet's facility following completion of the work for more than fifteen (15)

> days, for whatever reason (including failure to pay for the work performed), Customer will incur $250.00 per day storage fee per Engine or a $500.00 per day fee for an Aircraft stored at BizJet's facility. BizJet is under no obligation to provide any maintenance services whatsoever to the Engine(s) or Aircraft while being stored under this provision and any deterioration of the Engine(s) or Aircraft during such storage period shall be the Customer's sole responsibility.

(Doc. 79-4 at 8). The Second Agreement further provides that Defendant "shall . . . have the right to stop current services without notice until all payments due under this Agreement . . . have been made," and that a failure by Plaintiff "to send the mid-point payment of $930,000.00 by March 21, 2022 will result in immediate work stoppage without exception." (*Id*. at 3).

Plaintiff contends Defendant has no contractual right to storage fees where the storage-fee provision in question is expressly conditioned on Defendant's "completion of the work." Plaintiff argues "completion of the work" never occurred and therefore argues that no contractual storage obligation ever arose. Defendant contends the Second Agreement is ambiguous as to the issue of Defendant's entitlement to storage fees. As such, Defendant argues that summary judgment is inappropriate, because the interpretation of an ambiguous contract is a mixed question of law and fact that should be submitted to the trier of fact to determine the parties' intent.

Defendant asserts that it performed certain services after the engines were delivered to it in January 2022. The work completed included removal of the engines from the aircraft that delivered them, thus requiring separate storage of the engines outside of the airframe. The parties have stipulated that Plaintiff failed to timely make the $930,000.00 mid-point

payment by March 21, 2022, as required by the Second Agreement. (Doc. 24). Accordingly, Defendant ceased work on the engines but continued to store the engines and airframe for an extended period of time.

According to Plaintiff's proposed interpretation, Plaintiff's breach of the Second Agreement would provide Defendant with no contractual right to compensation for indefinite storage of the aircraft and/or engines at issue, because the condition precedent of "completion of the work" had not occurred. Defendant contends that "completion of the work" must be read in context of other provisions of the Second Agreement, namely (1) Defendant's right to stop work based on failure of Plaintiff to make the mid-point payment, and (2) other portions of the agreement referring to the overall "workscope" or "work scope" covered by the Second Agreement, which Defendant argues is distinct from the "work" contemplated in the storage fee provision. The parties also disagree as to whether the storage fee provision, if applicable, incurs separate charges for storage of the engines and airframe when stored separately.

"If the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated." *Whitehorse v. Johnson,* 156 P.3d 41, 47 (Okla. 2007). "In interpreting contracts, courts must view the document as a whole so as to give effect to every part of the contract and enable each clause to help interpret the others." *Nat'l Am. Ins. Co. v. Am. Re–Ins. Co.,* 358 F.3d 736, 740 (10th Cir. 2004) (citing 15 OKLA. STAT. § 157). If a contract is ambiguous, the Court may admit parol evidence to aid in interpretation. *Id*. (citing *Fowler v. Lincoln County Conservation Dist.,* 15 P.3d 502,

507 (Okla. 2000)). "Generally, the issue to which parol evidence has been admitted becomes 'a mixed question of law and fact to be determined by the trier thereof, whether court or jury.'" *Id.*, 358 F.3d at 740 (quoting *Harjo v. Harjo,* 247 P.2d 522, 526 (Okla.1952)).

The Court finds that, read as a whole, the Second Agreement is subject to multiple interpretations and therefore is ambiguous as to Defendant's entitlement to storage fees in the event of Plaintiff's failure to make the specified mid-point payment. As set forth above, Defendant has shown that a genuine dispute of fact exists with respect to the meaning of the phrase "completion of the work," particularly in the context of Plaintiff's failure to fulfill ongoing payment terms of the agreement. The plain terms of the contract are not sufficient to determine the intention of the parties when they executed the Second Agreement. As such, the Court finds that the meaning of the storage fee provision is a mixed question of fact and law that is not appropriate for summary judgment.

Accordingly, Plaintiff's Motion for Partial Summary Judgment (Doc. 79) is **denied**.

IT IS SO ORDERED this 30th day of September, 2026.

Christine D. Little

Christine D. Little
United States Magistrate Judge